IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNIE MAE SAWYER, as daughter :
and administrator of the estate :
of Arthur Waters, deceased,      :
                                 :
        Plaintiff,               :
                                 :      CIVIL ACTION 12-0020-KD-M
v.                               :
                                 :
SYLVIA COLLINS, BOBBY SANDERS,   :
and JAMES HOOD,                  :
                                 :
        Defendants.              :


REPORT AND RECOMMENDATION


        The Motions to Dismiss (Docs. 40-41, 56-57) filed by

Defendants Sylvia Collins, Bobby Sanders, and James Hood have

been referred for report and recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  Jurisdiction

has been invoked in this Court under 28 U.S.C. § 1331 pursuant

to 42 U.S.C. § 1983 (Doc. 37, ¶ 3).  After consideration, it is

recommended that Defendants' Motions both be denied.

        The facts, very briefly, are as follows.  Plaintiff Johnnie

Mae Sawyer is "the personal representative of the Estate of

Arthur Waters," a deceased Alabama prisoner (Doc. 37, ¶¶ 1, 10,

12-13, 24).  Defendant James Hood was the Perry County Sheriff

during the time of Waters' incarceration; Defendants Sylvia

1

Collins and Bobby Sanders were Jailers at the Perry County Jail
during that period (Doc. 37, ¶ 2).  The Decedent was a fifty-
three year old man who was five foot, seven inches tall and
weighed 121 pounds (*id.* at ¶ 8).  After being convicted of
second degree assault, Waters was ordered to turn himself into
the Perry County Jail no later than five o'clock p.m. on June
20, 2011; he surrendered at two o'clock p.m. while Collins and
Sanders were on duty (*id.* at ¶¶ 10, 12-14).  When he turned
himself in, Waters complained that he did not feel well; he
stated that he was not drunk and had not been drinking (*id.* at ¶
15).  Collins and Sanders placed him in isolation, without any
human contact, until eleven o'clock the next morning (*id.*).
When the prisoner was released from isolation, he complained
that he felt worse as he was nauseated and needed to vomit, had
diarrhea, had a fever, had trouble breathing, and was in pain
(*id.* at ¶ 16).  Waters was given a mat so that he could lie on
the floor in his general population cell (*id.* at ¶¶ 16-17).
While there, the Decedent's labored breathing and high fever
continued while he repeatedly soiled himself with diarrhea and
vomit (*id.* at ¶ 17).  During this nine-hour period of time,[1]

----

[1]Though the First Amended complaint states that it was only a
seven-hour period (*see, e.g.,* Doc. 37, ¶ 17), Plaintiff has filed a
Second Amended Complaint that states that the period of time was
actually nine hours (Doc. 54).

Decedent continued to seek medical attention from the Jailers;
additionally, other inmates informed Collins and Sanders of
Waters' pain and symptoms and requested medical care for him
(*id.*).  The only medical care provided by the Defendant Jailers
was to give the Decedent one dose of ibuprofen; they did not
contact Hood (*id.* at ¶ 18).  At four o'clock p.m., Collins and
Sanders completed their shift and left the Jail, leaving Waters
on the floor of his cell, in pain with fever and breathing
difficulty, soiled with vomit and feces; Collins and Sanders
were replaced by Jailers—and non-Defendants—Bennett and Eubanks
(*id.* at ¶ 19).  Bennett assessed the situation, gave Decedent
stanback and a sprite and called the Sheriff, telling him that
Waters needed a physician (*id.* at ¶¶ 19-20).  Hood told her to
have Waters fill out medical forms so that he could see a
physician the next day; though Bennett told the Sheriff that
Waters was not capable of completing the forms, Hood reiterated
his instructions (*id.* at ¶ 21).  The Jailers called the Sheriff
twice more over the next three hours to get medical attention
for Decedent, but Hood denied the requests (*id.* at ¶ 22).  At
about eight o'clock p.m., Bennett gave Waters some Pepto-Bismol
and again called the Sheriff to request an ambulance; Hood
denied the request for a fourth time (*id.* at ¶ 23).  At about
this same time, other inmates pulled Decedent onto the toilet;

3

shortly thereafter, he began shaking, took several breaths, and died (*id.* at ¶ 24).  Waters was left on the toilet for over an hour until the Coroner removed his body (*id.* at ¶ 24).  The Decedent's cause of death was pneumonia, compounded by tuberculosis (*id.* at ¶ 25).

On January 20, 2012, Sawyer brought this action, asserting[2] that all of the Defendants, through deliberate indifference, failed to provide medical treatment as required in the Eighth Amendment (count one) (Doc. 37, ¶¶ 27-30).  Plaintiff has also asserted a claim of Alabama common law negligence against Defendants Collins and Sanders (Doc. 37, ¶¶ 32-35).  Sawyer seeks the following relief:  judgment against all Defendants; punitive damages in an amount to be determined by a jury; court and litigation costs, including attorney's fees; and all other proper relief (Doc. 37, ¶¶ 30, 35).

On July 30, Defendants filed a Motion to Dismiss this action (Docs. 40-41).  Plaintiff has responded to the Motion (Doc. 43) to which the Defendants have replied (Doc. 44).  Sawyer has also filed a surreply (Doc. 55).  Defendants subsequently filed a second Motion to Dismiss (Docs. 56-57); Plaintiff has responded to the Motion (Doc. 59) and Defendants

---

[2]Though this action was initially filed on January 20, 2012, these claims arise out of the First Amended Complaint.

4

have replied to the response (Doc. 60).

The Court notes, initially, that "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  The U.S. Supreme Court explained that the purpose of the rule was to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).[3]  While factual allegations do not have to be detailed, they must contain more than "labels and conclusions;" "a formulaic recitation of the elements of a cause will not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 555 (2007)

---

[3]*Conley* also stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley*, 355 U.S. at 45-46.  The U.S. Supreme Court has done away with this standard in *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 557-563 (2007).  The Court, nevertheless, finds *Conley*'s statement regarding the purpose of Rule 8(a)(2) to be useful here in deciphering the analysis necessary for

(citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). "Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitle[ment] to relief."'" *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (quoting *Twombley*, 550 U.S. 557) (quoting *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombley*, 550 U.S. at 556). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of conduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). As noted by the Supreme Court, Plaintiffs must "nudge[] their claims across the line from conceivable to plausible[; otherwise,] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. It is noted, however, that a complaint may be dismissed, under Federal Rule of Civil

evaluating Plaintiff's claims.

Procedure 12(b)(6), "on the basis of a dispositive issue of law." *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)), *cert. denied*, 502 U.S. 810 (1991).

In their first Motion to Dismiss, Defendants argue that they are each entitled to qualified immunity in the Eighth Amendment claim brought against them (Doc. 41, pp. 12-23).  In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the U.S. Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  In *Anderson v. Creighton*, 483 U.S. 635, 639 (1987), the Supreme Court clarified this standard by concluding that qualified immunity "turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time [the action] was taken."  *Id.* at 639 (citations omitted). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.* at 640.

The Court notes that "[i]n order for the defendants to claim protection for qualified immunity, they must first

7

demonstrate that they were engaged in a discretionary duty."
*Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005)
(*citing Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir.
2004)).  Though no argument has been presented either way, the
Court finds that Hood, Collins, and Sanders were all acting
within their discretionary authority.  Therefore, the Court will
proceed with further analysis.

With the question of discretionary authority answered, "the
burden shifts to the plaintiff to show that qualified immunity
is not appropriate."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th
Cir. 2002).  The question for this Court to answer is:  "Taken
in the light most favorable to the party asserting the injury,
do the facts alleged show the officer's conduct violated a
constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201
(2001).  To make that determination, the Court will examine the
claim Sawyer makes that Waters was not provided with proper
medical care.

Section 1983 states that

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or
> causes to be subjected, any citizen of the
> United States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall

        be liable to the party injured in an action
        at law.

42 U.S.C. § 1983.  "A core principle of Eighth Amendment

jurisprudence in the area of medical care is that prison

officials with knowledge of the need for care may not, by

failing to provide care, delaying care, or providing grossly

inadequate care, cause a prisoner to needlessly suffer the pain

resulting from his [] illness."  *McElligott v. Foley*, 182 F.3d

1248, 1257 (11th Cir. 1999).  The U.S. Supreme Court, in *Estelle*

*v. Gamble*, 429 U.S. 97 (1976), has addressed the necessary

showing for a prisoner to make in bringing a medical claim,

stating as follows:

        [D]eliberate indifference to serious medical
        needs of prisoners constitutes the
        'unnecessary and wanton infliction of pain,'
        (*quoting Gregg v. Georgia,* 428 U.S. 153,
        182-83, [] (1976) (joint opinion)),
        proscribed by the Eighth Amendment.  This is
        true whether the indifference is manifested
        by prison doctors in their response to the
        prisoner's needs or by prison guards in
        intentionally denying or delaying access to
        medical care or intentionally interfering
        with the treatment once prescribed.

*Gamble*, 429 U.S. at 104-05.  "To prove a deliberate indifference

claim, a plaintiff must show: (1) a serious medical need; (2)

the defendants' deliberate indifference to that need; and (3)

9

causation between that indifference and the plaintiff's injury." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008), *overturned on other grounds by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010), (*citing Goebert v. Lee County*, 510 F.3d 1312, 1325 (11th Cir. 2007).

The Court will first examine whether Sawyer has demonstrated that Waters suffered from a serious medical need. *Danley* noted that there are at least two different tests for making such a determination. The first "is whether a delay in treating the need worsens it." *Danley*, 540 F.3d at 1310. The second test is "if the need 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Danley*, 540 F.3d at 1311 (*quoting Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002)).

The Court will now examine the facts as presented in the Complaint. Plaintiff asserts that Waters was sober and had not been drinking at the time he presented himself for incarceration (Doc. 37, ¶ 13). In spite of Waters' telling the Jailers that he did not feel well, Defendants Collins and Sanders put him in isolation, with no human contact, for twenty-one hours (*id.* at

10

¶¶ 13, 15).  When the Deceased was removed from isolation, he
complained that he felt worse as he was nauseated and needed to
vomit, had diarrhea, had a fever, had trouble breathing, and was
in pain (*id.* at ¶ 16).  Nevertheless, he was placed in a general
population cell where he lay on the floor in pain with a fever,
having difficulty breathing, vomiting and soiling himself for
the remaining five hours of the Jailers' shift and until he
died; the Jailers did give him one dose of ibuprofen (*id.* at ¶¶
17-19).  In spite of being called four times and told by Jailer
Bennett that Waters was too sick to complete medical forms and
needed to see a doctor, Sheriff Hood refused medical
intervention for him (*id.* at ¶¶ 20-23).

The Court finds that Plaintiff has demonstrated a serious
medical need under the second test discussed in *Danley*.  More
specifically, the Court finds that Waters' physical condition
was so "obvious that even a lay person would easily recognize
the necessity for a doctor's attention."  *Danley*, 540 F.3d at
1311.  The Court further finds that the first test—"whether a
delay in treating the need worsens it"—has been met as well.

Having determined that Sawyer has demonstrated a serious
medical need, the Court will next determine whether Defendants
were deliberately indifferent to that need.  "Deliberate
indifference to a prisoner's serious medical needs is a

11

violation of the Eighth Amendment." *Goebert v. Lee County*, 510
F.3d 1312, 1326 (11th Cir. 2007) (*citing Gamble*, 429 U.S. at
104).  To show deliberate indifference, Sawyer will have to
prove three things:  "'(1) subjective knowledge of a risk of
serious harm; (2) disregard of that risk; (3) by conduct that is
more than [gross] negligence.'"  *Goebert*, 510 F.3d at 1327
(*quoting Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)).
The Court will now examine the evidence to determine if Sawyer
can meet this test, starting with the Defendants' subjective
knowledge.

The Complaint asserts that Waters was a small man, standing
five foot seven inches tall and weighing 121 pounds; when he
turned himself in, he told Defendant Jailers that he had not
been drinking, was not drunk, and did not feel well (Doc. 37, ¶¶
9, 13-15).  When he exited isolation, Waters told Sanders and
Collins that he felt worse and needed medical care as he was in
pain, had a fever, was nauseated and needed to vomit, was having
trouble breathing, and had diarrhea (*id.* at ¶ 16).  The Inmate
continued to seek medical attention from the Jailers; all the
while, the other inmates tried to get the Jailers to seek
medical care for Waters (*id.* at ¶¶ 17-18).  Sanders and Collins
gave Decedent an ibuprofen (*id.* at ¶ 18).  Defendant Hood was
called four different times and made aware of the Deceased's

medical symptoms and condition (Doc. 37, ¶¶ 20-23).

The Court finds that Sawyer has satisfied the first prong of *Goebert*'s deliberate indifference test in that she has asserted sufficient facts that a jury could find that all of the Defendants had subjective knowledge of Waters' risk of serious harm.  While Defendants have argued that the Deceased's symptoms were not serious enough to signal to them that Waters was in jeopardy (Doc. 41, pp. 20-21), the Court rejects this assertion, finding it inconceivable that one could believe that a small-framed person, in pain with fever, having difficulty breathing, and experiencing regular vomiting and diarrhea, was suffering no risk of serious harm.  The Court will next examine whether the Defendants disregarded that risk.

The Complaint asserts that the Defendant Jailers initially placed the Deceased in isolation without human contact for a period of twenty-one hours even though he had told them that he felt bad, was not drunk, and had not been drinking (Doc. 37, ¶ 15).  Once released from isolation, in spite of Waters' pain, fever, labored breathing, vomiting, and diarrhea, Collins and Sanders offered him only a single dose of ibuprofen (*id.* at ¶¶ 16-18).  These Defendants also failed to contact a doctor to tend to Waters or even contact the Sheriff to let him know of his medical condition (*id.*).  Defendant Hood denied medical

13

attention to Waters after having been called four times by
Jailer Bennett and told that Waters was too sick to complete
medical request forms and after having been told that the Inmate
should see a physician (Doc. 37, ¶¶ 20-23).

The Court finds that a jury could find that Collins,
Sanders, and Hood disregarded Waters' medical condition and risk
of serious harm.  In spite of knowing about his multiple medical
symptoms, the Defendants, essentially, did nothing.  It is
necessary, though, to determine whether that disregard amounted
to more than gross negligence.

What "more than gross negligence" means is not easily
explained.  *Goebert*, 510 F.3d at 1327.  "Where the prisoner has
suffered increased physical injury due to the delay, we have
consistently considered: (1) the seriousness of the medical
need; (2) whether the delay worsened the medical condition; and
(3) the reason for the delay."  *Goebert*, 510 F.3d at 1327
(*citing Hill*, 40 F.2d at 1189).

The Court does not need, at this point, to restate the
medical symptoms set out in the Complaint as a determination has
already been made that Sawyer has established that Waters had a
serious medical need.  The second prong of the gross negligence
test—whether the delay worsened the medical condition—must be
answered in the affirmative considering that the symptoms got

14

increasingly worse and Waters ultimately died with those symptoms (Doc. 37, ¶¶ 17, 19, 24).

As for the reason for the delay, Defendants have asserted that they "did what any ordinary person would do when faced with symptoms such as Waters': wait and see if the symptoms subside with time" (Tr. 44, p. 10). Over the course of their shift, Defendants Collins and Sanders gave the dying Inmate an ibuprofen; during his entire thirty-hour incarceration under Defendant Hood's watch, Waters additionally received a stanback, a sprite, and some Pepto-Bismol.

The Court notes that "[g]rossly inadequate measures to treat an inmate's serious medical need will not eliminate a jailer's liability for deliberate indifference." *Danley*, 540 F.3d at 1312. While the Court easily recognizes that hindsight is mostly 20/20, it cannot ignore the fact that Waters died while the Defendants waited. The Court finds that Sawyer has asserted facts from which a jury could determine that Defendants delayed medical treatment for no discernible reason.

After going through the relevant analysis, the Court finds that Sawyer has demonstrated in her Complaint that Defendants, through their inaction, have engaged in more than gross negligence. This satisfies Plaintiff's burden of demonstrating that Defendants were deliberately indifferent to Waters' medical

15

needs.  The Court must next make a determination as to whether Sawyer has demonstrated "causation between that indifference and the plaintiff's injury." *Danley*, 540 F.3d at 1310.

The Court notes that, after having been essentially ignored for his entire incarceration in spite of being in pain, having labored breathing and fever, and experiencing continuous vomiting and diarrhea for the last nine hours of his life, Waters died (Doc. 37, ¶¶ 15-18, 21-24).  Certainly, his last hours could have been more comfortable with medical attention; it might have even saved his life.  The Court cannot say that the lack of any medical attention whatsoever caused Waters' death; that question should be left for the jury.  However, the Court will draw the inference that the lack of medical attention caused increased pain and an exacerbation of Waters' symptoms.

After reviewing the Complaint, and accepting the facts therein as true, the Court finds that Sawyer has demonstrated the necessary components to establish a claim of deliberate indifference under *Gamble*.  Specifically, Plaintiff has asserted facts from which a jury could determine that Inmate Waters suffered a serious medical need to which Defendants Hood, Collins, and Sanders were deliberately indifferent, causing Waters to suffer for no apparent reason.  The Court finds that the facts asserted are sufficient to present an Eighth Amendment

16

violation claim to the jury.

The next question for the Court to consider is whether that violation was clearly established at the time of the incident. *Harlow*, 457 U.S. at 818.  "The standard for determining whether a right is well-established for purposes of qualified immunity is whether the right violated is one about 'which a reasonable person would have known.'"  *Goebert*, 510 F.3d at 1329 (*quoting Harlow*, 457 U.S. at 818).  The Court notes that even though an Eighth Amendment violation has occurred, the Defendants are "due immunity from suit 'unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances.'"  *Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir. 2005) (*quoting Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002)).

The Court finds the case of *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008), issued three years prior to the incident giving rise to this action, to be instructive.  In that case, Danley was a pretrial detainee who sued jailers in a § 1983 action,

alleging excessive force[4] and deliberate indifference to his
serious medical needs after they had pepper sprayed him.   The
Eleventh Circuit Court of Appeals held that the defendants had
been deliberately indifferent to Danley's medical needs in that,
after he had calmed down from the pepper spray, they waited
twenty minutes before giving him the opportunity to shower; that
shower was for only two minutes and was not enough time to
properly decontaminate himself from the spray.   After twelve-to-
thirteen hours, Danley was released from jail, after having been
denied medical treatment; he went to his doctor who diagnosed
him to be suffering from conjunctivitis and bronchospasms.   The
Appellate Court found an Eighth Amendment violation and denied
the Defendants qualified immunity, stating the following:

> This is a case in which general legal
> principles announced by our decisions in
> this area of law are enough to make the
> right violated clearly established.  As we
> have concluded, Danley alleged both a
> serious medical need and the jailers'
> deliberate indifference to it.  The
> allegations in the complaint are that the
> jailers took only ineffective measures to
> remedy the need [] and ignored his pleas for
> help.  Our earlier deliberate indifference
> decisions have stated that when jailers are
> aware of serious medical needs they may not
> ignore them or provide grossly inadequate
> care.  Although Danley's allegations may

---

[4]The Court will not discuss this claim as it is irrelevant to
this action.

> later turn out to be unfounded, reasonable
> jailers would have been aware that the
> conduct that Danley alleges violated his
> clearly established rights.  The district
> court did not err in concluding that
> [Defendants] are not entitled to qualified
> immunity on Danley's deliberate indifference
> claim.

*Danley*, 540 F.3d at 1313.

In the action at hand, the Court has found that a jury could find that Defendants were deliberately indifferent to Water's serious medical needs, rendering, at best, grossly inadequate care, violating the Inmate's clearly established rights to medical treatment.  The Court finds that none of the Defendants are entitled to qualified immunity on this set of facts.  Therefore, it is recommended that Defendants' Motion to Dismiss (Docs. 40-41) Plaintiff's § 1983 claim on the defense that they are entitled to qualified immunity be denied.

In addition to making a claim under § 1983, Plaintiff claims wrongful death under Alabama law.  Pursuant to 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Defendants have not raised an objection to jurisdiction over the state claim on the ground

that it is not related to the § 1983 action raised herein.
Therefore, the Court will proceed to the arguments that
Defendants do make.

Defendants argue, in their Motion to Dismiss, that they are
all entitled, for different reasons, to state immunity on the
state law negligence claim (Doc. 41, pp. 7-12).  The Sheriff
argues that he is immune under the State Constitution while the
Jailers argue that their immunity arises from Alabama statutory
law.  The Court will address these arguments as presented.

Defendant Hood has asserted that the State law claim
against him should be dismissed (Doc. 41, pp. 8-11).  However, a
close reading of the Complaint demonstrates that Sawyer has not
raised this claim against this Defendant (Doc. 37, ¶¶ 31-35).
As such, there is nothing to grant or deny.

Defendants Sanders and Collins also seek to have the State
negligence claim against them dismissed (Doc. 41, pp. 11-12;
Docs. 56-57).  They argue that the Alabama Legislature passed
laws in 2011 that provide immunity to them, depriving this Court
of subject-matter jurisdiction on these claims.  These statutes
state as follows:

> The sheriff has the legal custody and
> charge of the jail in his or her county and
> all prisoners committed thereto, except in
> cases otherwise provided by law.  The

20

> sheriff may employ persons to carry out his
> or her duty to operate the jail and
> supervise the inmates housed therein for
> whose acts he or she is civilly responsible.
> Persons so employed by the sheriff shall be
> acting for and under the direction and
> supervision of the sheriff and shall be
> entitled to the same immunities and legal
> protections granted to the sheriff under the
> general laws and the Constitution of Alabama
> of 1901, as long as such persons are acting
> within the line and scope of their duties
> and are acting in compliance with the law.

ALA. CODE § 14-6-1.

> Any of the duties of the sheriff set
> out in subsection (a) or as otherwise
> provided by law may be carried out by
> deputies, reserve deputies, and persons
> employed as authorized in Section 14-6-1 as
> determined appropriate by the sheriff in
> accordance with state law.  Persons
> undertaking such duties for and under the
> direction and supervision of the sheriff
> shall be entitled to the same immunities and
> legal protections granted to the sheriff
> under the general laws and the Constitution
> of Alabama of 1901, as long as he or she is
> acting within the line and scope of his or
> her duties and is acting in compliance with
> the law.

ALA. CODE § 36-22-3(b).

The Court notes that both statutes specifically reference "the general laws and the Constitution of Alabama of 1901." Section 14 of Article 1 of that Constitution states "[t]hat the State of Alabama shall never be made a defendant in any court of

21

law or equity."  Alabama statutory law clearly holds that sheriffs are executive officers of the State and that claims against them are barred by Article 1, § 14 of the Alabama Constitution.  *Ex parte Sumter County*, 953 So.2d 1235, 1239 (Ala. 2006).

The Alabama Supreme Court held that "[t]he fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute."  *Ex parte McCall*, 596 So.2d 4, 6 (Ala. 1992) (*citing Clark v. Houston County Commission*, 507 So.2d 902 (Ala. 1987).  The newly-enacted statutes both state that people employed by the sheriff who are acting under his direction and supervision "shall be entitled to the same immunities and legal protections granted to the sheriff."  This language appears to clothe Defendants Collins and Sanders in the same immunity held by Alabama sheriffs.  However, there are two limitations on these protections.  For the Sheriff's employees to enjoy these protections, they must be (1) "acting within the line and scope of their duties" and (2) "acting in compliance with the law."  ALA. CODE § 14-6-1; *cf.* ALA. CODE § 36-22-3(b).

The first restriction, "acting within the line and scope of their duties," is the same requirement for a sheriff to receive state immunity in Alabama.  *Ex parte Purvis*, 689 So.2d 794, 795

22

(Ala. 1996) ("It is undisputed that Purvis and Scott were both acting within the line and scope of their employment when Whitt made his escape that led to the shooting of Mrs. Akers.  Based on the record, we must conclude that Purvis and Scott have clearly shown that each of them is immune from suit under the provisions of Art. I, § 14, Alabama Constitution 1901").[5]  This rule of law was confirmed by the Alabama Supreme Court thirteen years after *Purvis* in holding that "'claims against sheriffs and deputy sheriffs are barred by the absolute immunity of Article 1, § 14, of the Alabama Constitution of 1901 when the sheriffs or the deputies were acting within the line and scope of their employment.'"  *Ex parte Shelley*, 53 So.3d 887, 892 (Ala. 2009) (*quoting Ex parte Sumter County*, 953 So.2d 1235, 1239 (Ala. 2006)) (citations omitted).

The Court notes, however, that it has found no Alabama case or statute which requires that sheriffs were "acting in compliance with the law" to receive state immunity.  Defendants have not directed this Court's attention to any such requirement.

Looking at the history of these statutes, the Court notes

---

[5]Scott was a deputy sheriff.  *Ex parte Purvis*, 689 So.2d at 794. The Court notes that, under Alabama law, "deputy sheriffs are immune from suit to the same extent as sheriffs."  *Ex parte Shelley*, 53 So.3d 887, 891 (Ala. 2009).

that Defendants have correctly noted that the bill initiating
the legislation enacting these statues was introduced on Mar 1,
2011 (Doc. 57, p. 9).  That bill, Senate Bill 90, began with a
synopsis, stating as follows:

> Under existing law, the sheriff is
> granted sovereign immunity as a
> constitutional officer of the state.
> Generally, the courts have granted deputies
> and other persons acting as agents of the
> sheriff the same protection.
> This bill would specify that persons
> employed by the sheriff when acting for and
> under the direction and supervision of the
> sheriff would have the same sovereign
> immunity as the sheriff.

2011 Alabama Laws Act 2011-685 (S.B. 90, No. 4), p. 1.[6]  The
Court further notes that the two requirements being discussed—
"as long as such persons are acting within the line and scope of
their duties and are acting in compliance with the law"—do not
appear in the bill, as it was initially introduced, for either
statute  (*Id.* at pp. 2-3).

After being introduced, the Bill was referred to the Senate
Committee on Governmental Affairs and returned to the Senate, a
week later, after having been amended to include the two
requirements in both statutes.  2011 Alabama Laws Act 2011-685

---

[6]The Court found this information on Westlaw, under "Bill Drafts"
for AL LEGIS 2011-685, No. 4, after searching Ala. Code § 14-6-1.

(S.B. 90), pp. 1-4, No. 3).  The bill passed in the Alabama Senate on March 24, 2011 (*id.* at p. 4).  The Alabama House passed the bill on June 9, 2011.  2011 Alabama Laws Act 2011-685 (S.B. 90, No. 2), p. 4.  The act became law on June 14, 2011. 2011 Alabama Laws Act 2011-685 (S.B. 90, No. 1), p. 1.

After having gone through the legislative history of the statutes under review, the Court could find no information as to how the amendments were formed or came to be a part of the bill. More specifically, there is no apparent information available as to how the specific language that was amended into the bill was derived.  This is not necessary to know with regard to the first requirement since it mirrors the language required for a sheriff to receive immunity.  However, the Court is left to its own devices with regard to the second requirement.

Defendants have urged this Court to find that these words "acting in compliance with the law" are "a clarification that jailers must act within the scope of their employment" as any other interpretation would render the statutes meaningless (Doc. 57, p. 7; *see generally* pp. 7-10).  The Court finds this argument non-persuasive as such an understanding would be repetitive.  The Court also finds that such an interpretation would render the second requirement of no moment as the requirement has already been stated.

25

The Court finds that the words "acting in compliance with the law," found in §§ 14-6-1 and 36-22-3, has additional meaning beyond the words "acting within the line and scope of their duties," also found in those statutes.  Though it cannot say for sure what is meant by the phrase, the Court finds that it is a second requirement for sheriff's employees, in this case Defendants Sanders and Collins, to receive State immunity.

Sawyer has argued that Sanders and Collins were not acting in compliance with the law (Doc. 59, pp. 5-6; *see also* Doc. 43, pp. 28-30).  More specifically, Plaintiff argues that the Defendants "'acted beyond their authority by failing to follow nondiscretionary orders, rules, regulations, statutes, checklists, and/or policies'" (Doc. 43, p. 29 (*quoting* Doc. 37, ¶ 35)).

The Court reaches no particular finding with regard to this argument.  However, the Court finds that Defendants Sanders and Collins have not met the second requirement of the statutes. This conclusion is reached after noting that the Court has already determined that a jury could find that Defendants were deliberately indifferent to Water's serious medical needs, rendering, at best, grossly inadequate care, violating the Inmate's clearly established rights to medical treatment.  The Court finds that a jury finding that Sanders and Collins

26

violated the Eighth Amendment, most likely, is not what the
drafters of §§ 14-6-1 and 36-22-3 had in mind when they required
that sheriff's employees "act[] in compliance with the law."

Therefore, the Court specifically finds that the statutes
in question, Ala. Code §§ 14-6-1 and 36-22-3, do not deprive
this Court of subject-matter jurisdiction.  With that finding,
it is recommended that Defendants' Sanders and Collins Motion to
Dismiss (Doc. 41, pp. 11-12; Docs. 56-57) the common law
negligence claim against them be denied.

In summary, it is recommended that Defendants' Motions to
Dismiss (Docs. 40-41, 56-57) be denied in their entirety.

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection**.   Any party who objects to this recommendation or
anything in it must, within fourteen days of the date of service
of this document, file specific written objections with the
clerk of court.  Failure to do so will bar a *de novo*
determination by the district judge of anything in the
recommendation and will bar an attack, on appeal, of the factual
findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C);
*Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v.
Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The
procedure for challenging the findings and recommendations of
the magistrate judge is set out in more detail in SD ALA LR 72.4
(June 1, 1997), which provides that:

   A party may object to a recommendation entered by a
   magistrate judge in a dispositive matter, that is, a matter
   excepted by 28 U.S.C. § 636(b)(1)(A), by filing a
   "Statement of Objection to Magistrate Judge's

Recommendation" within fourteen days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objection party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded).** Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

Done this 2nd day of November, 2012.


s/BERT. W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

28